## Commonwealth v. Farrell et al.

*Arthur M. Eastburn,* district attorney, and *Edward G. Biester,* assistant district attorney, for Commonwealth.

*John P. Betz, Jr.,* and *Webster S. Achey,* for defendants.

BOYER, J., April 29, 1935.—The reasons set forth in support of the motion in arrest of judgment and the first and second of the additional reasons filed in support of the motion for a new trial relate to one general subject, namely, the applicability and constitutionality of the so-called Criminal Procedure Act of March 31, 1860, P. L. 427, sec. 49, providing that where a crime is committed during a journey upon any vehicle the venue may be laid in any county through which any part of such journey passed. Before discussing the questions involved it is important to note how the question arose in this case. The Commonwealth produced evidence to show that the murder was committed either within the boundaries of Bucks County or in Philadelphia County, but within 500 yards of the Bucks County boundary line. The Commonwealth produced no evidence whatsoever to the effect, or from which it might be inferred, that the crime was committed more than 500 yards beyond the Bucks County boundary line or that it was committed upon a journey. The only evidence to that effect was introduced for the first time by one of the defendants, Wiley, who testified that they had placed the victim on the floor of an automobile with the intention of taking him from the place of concealment in Bucks County to the victim's home many miles distant in Montgomery County, by way of and through the City of Philadelphia; that after they had gone several miles beyond the Bucks County line into Philadelphia County the victim was shot by Legenza, one of the accomplices. It is, therefore, apparent that

the question of the commission of the crime upon a journey arose entirely upon evidence offered by the defense for the purpose of showing that the crime was committed beyond the jurisdiction of the courts of Bucks County. The Commonwealth replied that if the crime was committed at the place described by the defendant Wiley, then it came within the provisions of the Criminal Procedure Act and was still within the jurisdiction of Bucks County.

Defendants' counsel contend that because of this evidence in the case the bill of indictment was insufficient in failing to charge that the crime was committed upon a journey, part of which lay within the County of Bucks. We do not believe that counsel actually meant that, but rather intended to say that even if the defendant showed that the crime was committed upon a journey, that was a complete defense in the absence of an averment in the bill of indictment that the crime was committed upon a journey. It is apparent that since the Commonwealth offered no evidence to show, and made no contention, that the crime was committed upon a journey, it could not be required to make such averment in the bill of indictment. Even if it had offered such evidence itself and tried the case on that theory, we are of the opinion that it was not required to aver such special jurisdiction in the bill of indictment. As we read the act, it is substantially to the effect that where such a journey passes through a number of counties it is sufficient to aver that it was committed in the one where the prosecution was brought. We can find nothing in the act indicating that it was the intention of the legislature to require a specific allegation or pleading in the indictment that the crime was committed upon a journey. Such a requirement would tend to multiply the difficulties of proof rather than to obviate them, which is the declared purpose of the act. No better illustration of this could be found than the present case in which there was evidence from which a jury might have found that the crime was committed

either within the boundaries of the county, or beyond the boundaries but within 500 yards thereof, or on a journey more than 500 yards beyond the boundary. Certainly one of the purposes of the act was to prevent the defeat of justice by just such pleas of want of jurisdiction.

The same question was raised by submitting a point for charge to the jury which was refused. While the court did not instruct the jury that the question of the commission of the crime upon a journey was set up solely as a defense, the court did in substance instruct the jury that before they could convict the defendants or either of them they must be satisfied beyond a reasonable doubt that the crime was committed either within the boundaries of Bucks County or, if committed outside of Bucks County, that it was committed within 500 yards of the boundary line, or that it was committed upon a journey, a part of which lay within Bucks County. The court very fully defined "journey" and referred to the testimony from which they might find that this was a journey. The court further instructed them that if the crime was committed upon such a journey and thereafter the journey was abandoned as originally planned and the defendants returned directly to Bucks County and disposed of the body there, the act would still apply and the court would still have jurisdiction: Heikes v. The Commonwealth, 26 Pa. 513. We are of the opinion that this instruction was correct and that the instruction asked for by the defendants that if the journey was abandoned after the crime had been committed, the act of assembly did not apply, is not a correct statement of the law. It might as well be said that if a defendant buys a railroad ticket in one county to a destination in another county with the intention of going to that destination and during the journey commits a crime, leaps from the moving train and returns to the original county, he does not come within the purview of the act. Such a construction would be based on neither reason nor justice.

The final question raised on this subject refers to the constitutionality of this particular section of the Act of 1860 relating to crimes committed upon journeys. The defendants contend that it violates the provisions of article I, sec. 9, of the declaration of rights of the Constitution of Pennsylvania, referring particularly to that portion of the section which provides that in all criminal prosecutions the accused shall have a right to "a speedy public trial by an impartial jury of the vicinage".

Although this act has been on the statute books of this State for three quarters of a century and is rather frequently invoked in the administration of criminal law, particularly in cases of larceny from railway cars, its constitutionality has never been directly passed upon by our courts in any reported case so far as we are able to ascertain. In this connection it may be pertinent to quote from the opinion of the Supreme Court in the case of Commonwealth v. Gilligan, 195 Pa. 504, at 511, passing upon the constitutionality of another act of assembly, as follows:

"The act has stood on the statute book, without challenge for nearly a quarter of a century, and millions of dollars of school funds have been collected and disbursed under its provisions. While these are not reasons for refusing to declare it void if in contravention of the constitution, yet they are strongly persuasive that the act is not so clearly unconstitutional as it should be shown to be to make it our duty now to set it aside: In re Sugar Notch Borough, 192 Pa. 349, 358."

We may, therefore, well start with the presumption that the act is constitutional.

The above-quoted language of section 9 of article I of the Constitution has come down through various constitutional revisions from 1790 to the present time. Since 1783, when jurisdiction of counties bounded by the Delaware River was extended by agreement to the New Jersey shore, beyond the very boundaries of the State it-

self, the legislature as well as the courts have recognized the right to extend jurisdiction beyond county lines.

As early as 1807 the legislature gave joint jurisdiction over crimes to counties bounded by the Monongahela River, regardless of the locus of the crime with relation to the county boundary lines. For a review of the history of this constitutional provision and legislation thereunder see Commonwealth v. Collins, 47 Pa. C. C. 608, affirmed by the Supreme Court in 268 Pa. 295. In Commonwealth v. Collins, 268 Pa. 295, the Supreme Court passed upon the constitutionality of section 48 of the Criminal Procedure Act of March 31, 1860, P. L. 427, containing a cognate provision as to jurisdiction of county courts for a distance of 500 yards beyond their boundaries. The significant part of that decision is its definition of the word "vicinage" as used in the Constitution and its declaration that "vicinage" is equivalent to "neighborhood" or "vicinity"; that the extent or boundaries of a vicinage are indefinite, whereas the extent of a county is definitely fixed by its boundaries and that the legislature may from time to time define vicinage by declaring what shall be included within that term. It appears to us that this declaration of the power of the legislature to prescribe or define the extent of the vicinage is both pertinent and important in passing upon the constitutionality of section 49. "Vicinage" in its ordinary and colloquial sense is largely a relative term. To a primitive people with limited means of transportation a vicinage or neighborhood would naturally be very restricted in its extent. However, as means of transportation, and particularly rapidity of transportation, are improved, the vicinage becomes proportionately enlarged. It is significant that the legislature included the provisions of section 49 in the Criminal Procedure Act soon after means of transportation by railroad became general and more efficient. It became apparent that with the improvement of such transportation and the facility with which crime might be committed upon vehicles and

its detection, and apprehension of the criminals, made more difficult, it became necessary that the vicinage for the trial of criminals must be proportionately extended. It is, therefore, wise and proper that the legislature should have the power to define the term vicinage from time to time as the concept of that term changes with material progress and modern needs. Even now, with the advent and general use of the airplane as a means of transportation, further legislation would seem to be required to meet the ever-changing extent of this latest mode of travel.

Another section of the Criminal Procedure Act in which the legislature exercised this power of extending jurisdiction beyond the boundaries of the county is section 38, which provides that where a bastard child is begotten in one county and born in another, the prosecution of the reputed father shall be in the county where such child was born. It was held under this section that the defendant could be tried in the latter county not only for the bastardy which occurred there but also for the fornication which was the cause, although such fornication may have taken place in a county far remote from the county of the trial: Heikes v. The Commonwealth, 26 Pa. 513; Commonwealth v. Swanheart, 70 Pitts. 1030. In the latter case it was held that the defendant could be convicted of statutory rape and bastardy in the county where the child was born, although the rape took place in another county. Surely the legislature went the full extent when it in effect declared that a defendant might be tried in a county at one end of the State for an offense which may have been committed in a county at the other end of the State.

In the case of Commonwealth v. Magnelli et al., 25 Dauph. 297, decided by the Court of Quarter Sessions of Dauphin County, the court sustained a conviction under section 48 of the Criminal Procedure Act, but expressed itself upon the constitutionality of section 49, at page 304, as follows:

"If called upon to do so we would find section 49 of the Act of 1860 to be constitutional. It has been in force for nearly sixty-two years during which time it has stood on the statute books of Pennsylvania without challenge. While this in itself is not a reason for refusing to declare an act void if in contravention of the constitution, yet it is strongly persuasive that the act is not so clearly unconstitutional as it should be shown to be to make it the duty of the court to now set it aside: Commonwealth v. Gilligan, 195 Pa. 504."

While our appellate courts have never directly passed upon the constitutionality of section 49 of the Criminal Procedure Act, nevertheless, it is significant that in Commonwealth v. Brown, 71 Pa. Superior Ct. 575, the Superior Court voluntarily invoked the provisions of section 49 as a justification for affirming a conviction for larceny committed upon a railway train, using the following language:

"We are of the opinion the evidence was sufficient to support a finding that the larceny was committed in Montgomery County, and was properly triable there, but, even if it was not sufficient to fix the place, section 49, of the Act of March 31, 1860, P. L. 428, 441, provides the venue of offenses committed during journeys shall be in any county through which the carrier traveled during the time the felony or misdemeanor shall have been committed."

This case is cited in an annotation in 11 A. L. R. 1020, 1024, as one of a number of cases in the United States which apparently recognize the constitutionality of such a provision. In view of the recognition of the validity of the provision of section 49 of the Criminal Procedure Act by our Superior Court, we are convinced that the defendants' challenge to the constitutionality of the act is unfounded.

NOTE.—Appeals were taken to the Supreme Court, which affirmed the judgments and sentences, in an opinion reported in 319 Pa. 441.